CURELL ET AL. vs. MISSISSIPPI MARINE AND FIRE
INSURANCE COMPANY.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

An error in stating the *time* when a vessel sailed, so as to place her *out of time*, when the insurance is effected, will be considered a misrepresentation and concealment of the true time, whether through error or intention, sufficient to avoid the policy and release the insurers.

EASTERN DIST.
*February*, 1836.

CURELL ET AL.
*vs.*
MISSISSIPPI MA-
RINE AND FIRE
INS. CO.

A knowledge of the true date at which a ship sails, is all important to th e insurers, who are about to take upon themselves the risk of her safe arrival at the port of destination.

The plaintiffs commenced this action on a policy of insurance, effected in the office of the defendants, the 4th of January, 1831, but the policy was not delivered until eight days afterwards. The defendants insured the risks "on supposed commissions on goods to the consignment of the insured on the ship Edward Downs, from Belfast to New-Orleans, conditioned that the said company should be liable only for total loss, on the non-arrival of said ship in the port of New-Orleans." The ship was lost and the plaintiffs claim two thousand seven hundred dollars as the amount of their commissions also lost.

This case has been before the court and remanded for another trial. See *facts and evidence of the case stated in* 3 *Louisiana Reports,* 353.

On the return of the cause it was submitted to the district judge, on some additional testimony taken on the second trial. The only remaining points to be decided relate to misrepresentation and concealment on the part of the insured.

One of the plaintiffs, who applied for the insurance, stated to the secretary of the company that the ship had been at sea about seventy-two days; that she had sailed between the 18th and 25th of October, but not before the 18th. Another of the plaintiffs (Kilshaw) distinctly stated that he had letters from Belfast to the 18th of October, at which period the ship Edward Downs had not sailed. These were the representations made by the party effecting the insurance, and at the time of taking out the policy. It was further stated that the vessel was seen off the coast of Jamaica, the 1st of December.

The evidence established that the vessel actually sailed the 6th of October, and at the time of effecting the insurance was out ninety instead of seventy-two days, as represented.

T. Urquhart, witness for the defendants, being asked, "if from his experience as a merchant or underwriter, he would not consider the fact of a vessel having sailed from a foreign port fourteen days earlier than was represented at the time of

effecting insurance on her, *as a material fact in influencing the* *insurers in taking the risk,* says, he should undoubtedly consider such misrepresentation to be a material fact in effecting such insurance."

Being asked, whether, if in considering the time of a vessel sailing as material, he would not add such a clause as a warranty, and insert the same in the policy, says, that if he considered the time of sailing as material, he would insert the same in the policy."

Witness considers the premium of seven and a half per cent. for insurance on commissions as a high rate, and out of the ordinary rate of insurance. The usual rates on goods from Europe to the port of New-Orleans, on vessels out forty or fifty days, is one and a half per cent.

Witness being cross-examined, was asked if he would consider the fact of a vessel bound to New-Orleans, having sailed the 6th of October, instead of the 18th, as represented to the insurers, as a material fact, if the vessel insured had been seen off the Island of Jamaica on the 1st of December, when the insurance was made in New-Orleans the 4th of January following ; says, in that case he should not consider the fact of the vessel having sailed fourteen days earlier than was represented, *to be material.* But that from the constant and almost daily intelligence received in this country from Europe, it is impossible to conceal the actual date of a vessel sailing from thence. That the precise time of vessels sailing from a *port* in Europe to this place is generally uncertain, and not positively known to merchants here." But further, in the opinion of witness, "if a person applying for insurance on a vessel, in place of stating in the usual way that the vessel was to sail on or about a certain day, stated to the underwriters that letters received from the port from which the vessel was to sail, and that she had sailed between the 18th and 25th of a certain month, and not before the 18th, and the fact turns out that she actually sailed on the 6th of the same month, such a misrepresentation would *be very material.* Witness has been a director or president of an insurance

EASTERN DIST.
February, 1856.

CORELL ET AL.
vs.
MISSISSIPPI MA-
RINE AND FIRE
INS. CO.

company ever since their first establishment in the city of New-Orleans."

It was in evidence that the Edward Downs was seen off the coast of Jamaica the 1st of December, by the ship Mars, but this fact was not communicated at the time of making the insurance, though it was known and reported to the office before the policy was delivered to the insured. It was also in evidence that passages from Europe to New-Orleans were unusually long that season. The Edward Downs was lost on the 3d of December.

From all the evidence exhibited, the district judge concluded that the ship was out of time when the insurance was effected. Judgment was rendered for the defendants. The plaintiffs appealed.

*Eustis*, for the plaintiffs, contended,

1. That there could not at the present state of regular communication between this country and Great Britain and Ireland, be any thing like a deception as to the time of sailing of a general ship, a regular trader, from a port like Belfast to New-Orleans.

2. Any verbal representation on the subject, must be a matter of conjecture, as the newspapers afford to every Insurance office, certain *means of information*, as to the time of the sailing of vessels, those in port, &c. &c. Courts so interpret all representations of this kind. *Phillips on Insurance, page* 82. The former ones *on this subject*, are no longer adhered to, and a rule is adopted more consistent with the intelligence of the age. A case is there cited, in which a ship represented to sail in May, sailed in July. It was held not to be a misrepresentation. *Allegra & Adams* vs. *The Maryland Insurance Co.* 1 *Gill & Johnson,* 136.

3. Underwriters are presumed to know the ordinary marine intelligence. 2 *Phillips on Insurance,* 85. "The general presumption is, that the agents of the office will examine those items of marine intelligence which are expressly designed speedily to diffuse information." 10 *Pickering's Reports,*

402. 2 *Phillips*, 85–6–7. *Manuscript case of Alsop* vs. *The* *Commercial Insurance Company*, decided by Judge Story, in October, 1833.

4. If the underwriters were misled in this case, it was because they choosed to be. The possession of the ordinary marine intelligence, which they were bound to know, would have prevented any mistake on the subject.

5. If the representation was important, it ought to have been inserted as matter of warranty. See *testimony of Urquhart*. 1 *Phillips*, 130, *et seq.* The delivery of the policy to the assured, after the situation of the vessel was known to the insurers, without any mention or warranty as to the time of sailing, was a waiver by the insurers of any representation on that point.

*Lockett*, for the defendants.

*G. B. Duncan*, contra.

*Mathews, J.*, delivered the opinion of the court.

This case was before the Supreme Court in *February term*, 1832, and was remanded to the District Court for a new trial, in consequence of a belief that the verdict of the jury, on which the judgment had been based, was not supported by the evidence. The cause on the new trial, was finally submitted to the decision of the court, without the intervention of a jury, and judgment being rendered for the defendants, the plaintiffs appealed.

A correct decision of the case depends mainly on one fact, viz. whether there was concealment or misrepresentation on the part of the insured relative to the time at which the vessel sailed from the port *a qua*. The plaintiffs having insured the amount of commissions to which they would be entitled on goods shipped to their consignment, by the ship Edward Downs, from Belfast, in Ireland, to New-Orleans. All the important facts disclosed by the testimony, are detailed in the opinion heretofore pronounced by this court. See 3 *Louisiana Reports*, 353.

Eastern Dist.
February, 1836.

CURELL ET AL.
vs.
MISSISSIPPI MA-
RINE AND FIRE
INS. CO.

In the evidence then offered, allusion was made to letters which had been received by the plaintiff, Kilshaw, from Belfast, from which it was presumed he had derived knowledge of the true date on which the ship sailed.

These letters were not shown on the first trial of the cause in the court below, but were exhibited on the last. They do not, however, in our opinion, materially vary the state of the case. If they be admitted to have any effect on it, the conclusion or influence to be drawn from them, would be rather prejudicial to the pretensions of the appellants. In obtaining the insurance, the plaintiffs assumed as a fact, and so represented it to the insurers, that the vessel did not sail before the 18th of October, 1830. Now by one of the letters alluded to, dated Belfast 13th October, and received in New-Orleans on the 22d of December following (about twenty days before the insurance was effected) mention is made of goods similar to those per Edward Downs, as being on hand. The inference from this expression (as we understand it) would be that the ship had sailed before the date of this letter.

The only question in the case is, whether the information or representation given by the insured to the insurers at the time of making the contract, and which is shown by the evidence to have been incorrect, was of a fact material to the risk assumed.

We state this as the only question, because considering the obligation of the insurers complete and binding from the time the terms of insurance were accepted by them, (if the contract be one entered into in good faith and without error,) in considering the case, we leave entirely out of view the subsequent occurrences disclosed by the testimony, as to the observations of the president of the company about the time the policy was delivered to the plaintiffs, and after some additional facts relative to the progress of the ship on her voyage, had come to the knowledge of the insurers. These facts can have no influence on the cause, for it was not known at the time of making the contract, that the vessel had been seen near the coast of the island of Jamaica. The insurance

must be considered as one from Belfast to New-Orleans. The representation made by the plaintiffs at the time when it was obtained, showed the ship to be out from the port *a quo* seventy-two days, when in truth ninety days had elapsed from the period of her sailing, making a misrepresentation or suppression of the space of eighteen days. Whether this misstatement arose from a deliberate intention to deceive, or from error, is not material, the fact being assumed on the part of the applicants for insurance; if it be material in relation to the risk taken, and was afterwards shown to be false, it suffices to avoid the contract.

The testimony shows, that an ordinary voyage from Belfast to New-Orleans, is performed in about fifty or fifty-five days. But when western winds prevail, the period may be lengthened.

From this it is seen that the ship, in the present instance, was greatly out of time when the insurance was effected. The knowledge, therefore, of the true date at which she left the port *a quo*, (as it appears to us) was all important to those who were about to take on themselves the risk of her safe arrival in the port of destination ; and they cannot be presumed to have been conusant of this fact, as they were not directly interested in such knowledge previous to the time when the erroneous representation was made to them by the plaintiffs.

It is seen that we have considered the case solely in relation to the doctrine of representations in insurance, and as not coming within any of the rules relating to warranties, and as a proof of the correctness of this mode of treating it, we refer to *Condy's Marshal, page* 450, *et seq.* and *Phillips on Insurance, pages* 85–6.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.

An error in stating the *time* when a vessel sailed, so as to place her *out of time,* when the insurance is effected, will be considered a misrepresentation and concealment of the true time, whether through error or intention, sufficient to avoid the policy and release the insurers.

A knowledge of the true date at which a ship sails, is all important to the insurers, who are about to take upon themselves the risk of her safe arrival at the port of destination.